KATHERINE LOWDEN, Defendant in Error, *vs.* JOHN C. WILSON, Plaintiff in Error.

*Opinion filed February 20, 1908—Rehearing denied April 9, 1908.*

1. NOTICE—*purpose of recording laws is to charge subsequent purchasers with notice.* The purpose of the recording laws is to charge subsequent purchasers with notice and protect them against prior unrecorded conveyances, and the recording of a deed has no effect to charge with notice a prior purchaser who has recorded his conveyance.

2. SAME—*purchase subsequent to unrecorded deed is not presumed to be in bad faith.* As between a purchaser of property who has recorded her deed and a prior purchaser whose deed was not recorded until a later date, the burden of proof is upon the latter to show that the purchase of the former was not *bona fide;* and the former is not required, in the first instance, to prove that she became a purchaser and paid the full purchase price before she had any notice, actual or constructive, of the other deed.

3. SAME—*fact of notice must be proved.* In order to postpone the title of a purchaser, who has recorded her deed, to that of the holder of a prior unrecorded deed, the proof must be clear and positive that the purchase was in bad faith and after notice, actual or constructive, of the deed, and evidence which merely raises a suspicion as to such matters is not sufficient.

4. PRINCIPAL AND AGENT—*when agent's admissions are not admissible.* Admissions by an agent which tend to show a liability upon the part of the principal with respect to a certain transaction

are not admissible in evidence unless they are part of the *res gestæ* and were made at the time of the transaction.

5. SAME—*when admission by husband is not admissible to bind wife.* Where a husband acts as his wife's agent with respect to a certain real estate transaction, an admission made by him long after the transaction was closed, to the effect that he had consulted a certain attorney with reference to the title, is not admissible for the purpose of showing that such attorney was the agent of the wife in the transaction and that his knowledge of a certain unrecorded deed was notice to her of its existence.

6. SAME—*notice of agent, to bind principal, must be within the scope of the agency.* A person in whose hands a check for purchase money is deposited by the purchaser, and whose sole duty is to deliver the check when possession of the property is delivered to the purchaser, has no agency as repects the title to the property, and knowledge upon his part that there was an outstanding unrecorded deed affecting the property is not chargeable to the purchaser under the doctrine of agency.

7. PLEADING—*when defect in bill to set aside deed is waived.* Where a bill to set aside, as a cloud upon complainant's title, a deed executed before but not recorded until after the complainant's deed was recorded, fails to allege the consideration for complainant's deed and that it was *bona fide* and truly paid, the defect is one of form, which is waived if not taken advantage of by demurrer.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

WILLIAM SLACK, for plaintiff in error.

JOHN F. MAHON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a writ of error to review a decree of the superior court of Cook county setting aside a quit-claim deed to the plaintiff in error of an undivided one-third interest in certain premises in the city of Chicago as a cloud upon the title of defendant in error to the whole of said premises.

The lot in question, prior to March 18, 1903, was owned by one Albert Kneblewicz, subject, however, to a mortgage to the St. Joseph Building and Loan Association, which was

then being foreclosed. It appears that in December, 1902, Kneblewicz and his wife entered into an agreement with plaintiff in error and another attorney that the attorneys should represent the former in the foreclosure proceeding and receive as their fees one-third of such sum as might be saved over and above the claim of said building and loan association on said premises. Kneblewicz and his wife were Polish people and could not talk English. At the time of this arrangement their son-in-law interpreted for the parties and agreed with plaintiff in error and his associate that he would pay them $5 a month on their fees, and did pay $25 or $30 in that manner, but evidently tiring of this arrangement he brought the parties together again, with the result that Kneblewicz and his wife deeded to plaintiff in error an undivided one-third interest in the premises for services as attorney in said proceedings. The testimony, however, is very conflicting as to whether this deed was intended as an absolute conveyance or merely contingent upon the successful outcome of the suit in Kneblewicz's favor. The foreclosure was being resisted on the ground that the original papers therein were defectively acknowledged and that Kneblewicz still retained the homestead interest. The evidence shows that the premises were worth about $1000. The testimony is also conflicting as to just how much of the consideration of the deed was included for services already rendered and how much was for services yet to be performed. The deed to Wilson was not filed for record until October 28, 1904. There is nothing in the record to show why there was this delay in recording or what led to the deed being recorded when it finally was.

The foreclosure proceedings against the premises were being conducted in favor of the building and loan association by their attorney, Piotrowski, who is a brother-in-law of defendant in error. June 16, 1904, Kneblewicz and his wife executed to defendant in error a quit-claim deed to the whole of the premises in question for a consideration of

$150. This consideration was not paid in cash but by check signed by Piotrowski, which was deposited in trust with one Wiengierski. At the same time an agreement was signed by Kneblewicz and his wife and defendant in error by which it was agreed that the check in question should be held in escrow, along with the agreement, until Kneblewicz vacated the premises, and that the latter should pay rent until he surrendered the premises, at the rate of $10 per month. It is not clear from this record whether defendant in error signed this contract herself or by attorney. She was not present at the time the papers were drawn. Her testimony is to the effect that her husband acted as agent for her in this transaction, and that through him she turned over to Piotrowski the $150 before Piotrowski gave the check in question. This is also testified to by Piotrowski and is not denied by anyone. Piotrowski testified that he advised the defendant in error's husband to employ attorney Wood to act for the defendant in error as to the examination of the title and the settling of legal matters in connection with the purchase of the property. Wood occupied a suite of offices with Piotrowski, but was not, so far as the record discloses, associated with him in any other way in the law business. This check was never paid in cash to Kneblewicz but was delivered by him to Piotrowski November 4, 1904, and Kneblewicz given credit for rent for occupying said premises and also given credit for about $10 attorney's fees to Piotrowski.

Kneblewicz did not give up possession of the premises in question until forcible entry and detainer proceedings had been started by defendant in error and judgment obtained against him in September, 1904. It appears that at this time he signed a lease with defendant in error to pay rent for the premises at the rate of $10 per month, and that some of this rent, as well as rent previous to the time of signing the agreement of June 16, was paid, as aforesaid, out of said check. The only testimony in the record as to

the reason why the check was not cashed at the time this lease was made is that arrangements could not be made to bring Kneblewicz, his son-in-law, and Wiengierski together so that the check could be delivered up and the whole matter disposed of, the son-in-law's presence being desired so that he could interpret for and advise his father-in-law. The deed to defendant in error was recorded June 16, 1904, the same day it was executed. She testified that the money used for the purchase of the lot was her own, a part of which she had before marriage and the rest of which she received from her parents, but she did not appear to have a clear idea of the details of the various transactions, stating that her husband had acted for her. It is clear that the defendant in error, through her husband acting as agent, received the quit-claim deed from Kneblewicz and wife with the understanding that there was a building and loan association mortgage on the premises which could be taken up for about $500, and that Jacob Glos had a tax deed on the premises dated September 18, 1899. There was some talk as to the amount for which this tax deed title could be cleared up at the time the quit-claim deed was given to the defendant in error, but the exact amount necessary therefor was not then ascertained. Glos gave a quit-claim deed to the property to one Mohrman, August 11, 1904, and thereafter, October 22, 1904, Mohrman gave a quit-claim deed to defendant in error, receiving therefor in the neighborhood of $300. September 15, 1904, the defendant in error purchased the interest of said building and loan association in said property, paying therefor between $400 and $500. The evidence is not definite as to the amount.

This bill was filed by defendant in error at the April term, 1905, of the superior court of Cook county and answer and cross-bill were filed by plaintiff in error. After various amendments to the pleadings the cause was referred to a master in chancery to take evidence, who reported that plaintiff in error's deed was for a contingent fee for ser-

vices and was in the nature of a mortgage; that the quitclaim deed to defendant in error was based on a good and valuable consideration; that at the time of the execution and delivery of the deed to her she had no actual or constructive notice of the deed to Wilson; that the indebtedness of the loan association secured by trust deed and the tax deed to Glos were valid, and that the respective interests of these parties were vested, at the time of the hearing, in defendant in error, and that she had paid for the property about the sum of $1000; that the consideration of the deed to plaintiff in error had failed and the deed should be set aside as a cloud upon the title of defendant in error. Exceptions were filed to this report, substantially all of which the court overruled and entered a decree with practically the same findings as set forth in the master's report, excepting that the decree held that the deed to plaintiff in error was valid and based on a good consideration for legal and professional services, but that as defendant in error had obtained title without actual or constructive notice of said deed it should be set aside and declared null and void as against defendant in error's interest and as a cloud upon her title, and that the cross-bill be dismissed for want of equity.

Plaintiff in error insists that the bill in cases of this kind must state, among other things, the consideration, with the distinct averment that "it was *bona fide* and truly paid, independently of the recital in the deed," and that this bill failing to do so, is fatally defective, citing in support of this contention, *Brown* v. *Welch,* 18 Ill. 343, *Moshier* v. *Knox College,* 32 id. 155, *Keys* v. *Test,* 33 id. 316, *Boone* v. *Chiles,* 10 Pet. 177, *Johnson* v. *Georgia Loan and Trust Co.* 141 Fed. Rep. 593, and other cases of the same import. Plaintiff in error is not in position to raise the point. The defect, if any, is simply in the form of the pleading, and if not taken advantage of by demurrer it is waived. (1 Daniell's Ch. Pl. & Pr.—6th Am. ed.—p. 582; *Dupuy* v. *Gibson,* 36 Ill. 197; *Fisher* v. *Stone,* 3 Scam. 68; *Judson* v. *Stephens,*

75 id. 255). Had the objection been made on the hearing, the defect, if any, could have been obviated by amendment. (*Kuchenbeiser* v. *Beckert,* 41 Ill. 172; *Holman* v. *Gill,* 107 id. 467.) Neither the answer nor cross-bill of plaintiff in error raises this question of pleading, but they join issue and deny consideration of any kind was paid by defendant in error to the vendor. The case of *Brown* v. *Welch, supra,* most relied on by plaintiff in error, states distinctly that this defect in pleading may be waived (p. 348) : "But by waiving this objection to the pleading the complainant did not waive his right to have a legal cause shown to defeat the equity shown by the bill and proofs. We think it was incumbent on the defendants to have shown in their answer and by proofs, or, if the insufficiency of the answer was waived, they should have shown by the proofs, at least, that they had paid for the land, and that hence they have, in good conscience, as much right to the land as complainant," etc. *Moshier* v. *Knox College, supra,* also turns on the question of a failure to prove that the grantee in the deed was a *bona fide* purchaser for valuable consideration, and not on a question of pleading; also in *Keys* v. *Test* the grantees failed to prove a consideration actually paid. The bill in this case is inaccurately drawn, and the facts are not fully stated and are interwoven with conclusions of law, still we think it sufficiently sets out a good cause of action in favor of defendant in error to sustain, on the pleadings, the decree.

Plaintiff in error contends that it has not been shown that defendant in error was a *bona fide* purchaser for a valuable consideration; that the record must disclose that she became a purchaser without notice, actual or constructive, and paid the entire purchase price before she received such notice, in order to make her deed good as against his. The recording laws of the State operate for the protection of *bona fide* purchasers. It is not true, however, as plaintiff in error argues, that the purchase is presumed not to be

*bona fide* until proof is made to the contrary. The burden of proof in such cases is upon the person alleging bad faith or want of consideration. *Ryder* v. *Rush,* 102 Ill. 338; *Anthony* v. *Wheeler,* 130 id. 128.

Plaintiff in error insists most earnestly that the evidence shows this purchase was not made in good faith, and that the circumstances surrounding the transaction are such that it must be presumed that defendant in error had constructive notice of his deed. He insists that even if the evidence does not compel the conclusion that defendant in error had such constructive notice, it must be held to show that Piotrowski acted as defendant in error's agent in purchasing this property, and therefore any knowledge that he had of said deed would be a notice to defendant in error. Obviously, from this record, Piotrowski, at or about the time the deed in question was given to the defendant in error by Kneblewicz, had knowledge of Wilson's deed, and there are circumstances in this record tending to show that he was apparently acting as the agent of defendant in error's husband. He was on friendly terms and had talked with her about the transaction as well as with her husband; was present at Wiengierski's office when the matter was closed up; recommended to Mr. Lowden the attorney that should be employed by him; either filed defendant in error's deed for record on the day it was executed and without her seeing it or was present when it was recorded. We are inclined to think that the weight of the evidence in the record would lead to the conclusion that he knew of the plaintiff in error's deed previous to the time defendant in error's deed was executed by Kneblewicz and wife. The question as to whether he acted as her agent or the agent of her husband is not entirely free from difficulty. Her testimony and that of Piotrowski himself is positive and direct that he did not act as her agent. There is no positive testimony contradicting this that we consider properly in the record unless it be the testimony of Wiengierski, and his is so contradictory

on this point as. to have little weight. Plaintiff in error testified that Mr. Lowden admitted to him that he consulted with Piotrowski as to the title. This testimony is not admissible. The admission is claimed to have been made November 21, 1905, pending the hearing of this suit and long after the transaction in question wherein Lowden acted as agent for his wife had been closed up. Under the authorities such declarations of agents are not admissible unless they constitute a part of the *res gestæ* and were made at the time the transaction in question was being conducted. (*Pennsylvania Co.* v. *Bridge Co.* 170 Ill. 645; *Summers* v. *Hibbard & Co.* 153 id. 102; 1 Greenleaf on Evidence,— 16th ed.—chap. 17, sec. 184c.) The title of a subsequent purchaser whose deed is first recorded will not be defeated on the ground of notice of a prior unrecorded deed "unless the proof of such notice is so clear and positive as to leave no reasonable doubt that the taking of the second conveyance was, under the circumstances, an act of bad faith towards the first purchaser. The fact of notice must be proved by direct evidence or by other facts from which it may be clearly inferred, and the inference must not be probable, but necessary and unquestionable." (*Robertson* v. *Wheeler*, 162 Ill. 566.) Mere suspicion will not raise an inference that such purchaser had notice. (*Rogers* v. *Wiley*, 14 Ill. 65; *Grundies* v. *Reid*, 107 id. 304.) There are circumstances in this record sufficient to raise a suspicion that defendant in error had notice, but we cannot say from this evidence that it is so clear and positive as to show, beyond a reasonable doubt, that the defendant in error purchased this property in bad faith or had actual or constructive notice of the deed to plaintiff in error, either directly or through her authorized agent, at the time the deed to herself was executed.

In this connection it may be stated that the uncontradicted testimony to the effect that defendant in error had purchased the interest shown by the tax deed as well as that

of the building and loan association, and paid between $700 and $800 therefor, tends strongly to show her good faith in the transaction.

In the view we have reached on other questions we shall not consider or decide whether the tax deed is so pleaded that it could be held good title, on the proof before us, as against the· interests of plaintiff in error. So far as anything is disclosed on the record, however, the tax deed and the interest of the building and loan association were *bona fide* and plaintiff in error took his deed subject to them. If so, defendant in error would be subrogated to the rights of those from whom she purchased these interests. *Worcester Nat. Bank* v. *Cheeney,* 87 Ill. 602; *Lowman* v. *Lowman,* 118 id. 582.

Plaintiff in error further contends that the check for the $150 was not actually paid until his deed was recorded, and therefore, at least as to the value of the equity over and above the tax deed and the building and loan association encumbrance, he is entitled to an interest under his deed, citing *Baldwin* v. *Sager,* 70 Ill. 503, *Schultze* v. *Houfes,* 96 id. 335, and other authorities to the effect that protection to a subsequent purchaser will only be given as to those payments made before notice of the prior deed. He seems to have overlooked the fact that one of the objects of recording acts is to protect subsequent purchasers against previous deeds or mortgages not recorded, and that the recording of the deed is constructive notice only to those who have subsequently acquired some interest or right in the property; that the recording of a deed affords no notice whatever to a prior purchaser who has recorded his deed. 2 Devlin on Deeds, (2d ed.) sec. 712; *Doolittle* v. *Cook,* 75 Ill. 354; *Boone* v. *Clark,* 129 id. 466; *Partridge, Wells & Co.* v. *Chapman,* 81 id. 137.

The argument is also made that Wiengierski was acting as the agent or depositary, not only of defendant in error, but for Kneblewicz, in holding the check and articles of

agreement in question, and that notice to him before the check was cashed was notice to defendant in error. Notice, to bind the principal, must have reference to business in which the agent is engaged by the authority of the principal. (*Doyle* v. *Teas,* 4 Scam. 202; 1 Am. & Eng. Ency. of Law,—2d ed.—p. 1146, and cases cited.) Wiengierski had nothing to do with the title to the property. His simple duty was to turn over the check to Kneblewicz when possession was given to defendant in error. Furthermore, the testimony shows that Kneblewicz was entitled to this check the latter part of September, as he had given possession of the premises and taken a lease therefor. The condition upon which the check was to be delivered having been performed, Wiengierski, the depositary, then became the agent or trustee of Kneblewicz and was no longer the agent of defendant in error. (16 Cyc. 575, and cases cited.) Wiengierski had knowledge of the deed of the plaintiff in error previous to the time the check was put with him in escrow, but his knowledge could not be charged to defendant in error. There is nothing in the record to indicate just at what time .defendant in error received actual notice of the deed to plaintiff in error. So far as the record discloses it appears to have been after the check was cashed, in November, 1904.

Some points subsidiary to those already considered have been discussed in the briefs. We think our conclusions on the questions heretofore considered fairly dispose of all other points raised.

We have examined the authorities cited by plaintiff in error not referred to specifically in this opinion, and, considering the facts before us, do not find anything therein that in any way conflicts with the conclusions heretofore stated.

Finding no error in the record the decree of the superior court will be affirmed.                    *Decree affirmed.*