HUBBARD v. HUBBARD.

(Third Division.   Valdez.   June 22, 1916.)

No. 609.

1. DEEDS ⊗⇒56(2)—HUSBAND AND WIFE—DELIVERY.

The parties were married at San Diego, Cal., in 1891, where the defendant and their children have since resided. Plaintiff acquired copper mines in Alaska, and deeded a one-quarter interest in a mine to his wife in 1906. In 1908 plaintiff attempted to sell the mines to parties in Chicago, and wrote to defendant to send him a deed to the quarter interest, so that he might sell it for her, with the rest of the interest. The sale was not made, and plaintiff returned the deed to her without recording, and the defendant thereupon destroyed it. In June, 1913, plaintiff secured a divorce from the defendant in the state of Washington. On April 17, 1913, this action was begun in Alaska, by the prayer

of which plaintiff demanded "that a decree of this court be entered quieting his [plaintiff's] title to the quarter interest of the mine mentioned. The evidence disclosed that plaintiff had written to the defendant many letters acknowledging her right to the mine, and the court *held* that the plaintiff had no right to or interest in the premises; that the deed executed by defendant to plaintiff in June, 1908, was never in a legal sense delivered to the plaintiff, and it was never the intention that the title to said property should pass to or vest in plaintiff.

2. ESTOPPEL ⬯63—INCONSISTENT CLAIMS.

There is nothing that appeals to a court of equity, moving it to grant relief to a plaintiff, who has created a condition by his own voluntary act, which was for a most commendable purpose (that of the future care and protection of his own children), where he has frequently affirmed this purpose in writing during a period of seven years, at the end of which time he desires to annul and disaffirm all of these, his own declarations. Every principle of estoppel and equity is against such a proceeding.

3. TRUSTS ⬯43(3)—STATUTE OF FRAUDS—DEEDS.

In all cases where a deed or instrument of conveyance is absolute on its face, and the grantor or his assignees seeks to defeat its operation by showing that the deed, though absolute in form, was in fact executed upon certain express trusts, the grantee may invoke the protection of the statute by requiring proof of these alleged trusts to be made in writing. The writing need not be in the form of an agreement between the parties; and any writing subscribed by the party will be sufficient, if it contain the requisite evidence.

The plaintiff and defendant were married at San Diego, Cal., in 1891, and have three children. The defendant and her children as born have ever since resided at San Diego. Early in the year 1913 the plaintiff began a divorce action in the state of Washington, and had presumably acquired a legal residence therein, for in June, 1913, he secured a decree of divorce from defendant in said action.

About 1897 plaintiff, aided and assisted by the defendant from her own separate funds, came to Alaska. He prospected and acquired interests in mining claims, among others in the copper property near the Kotsina river, which was later deeded to the Hubbard-Elliott Copper Mines Development Company. Although this property was undeveloped, the owners thereof sold a large amount of stock in said corporation; the plaintiff realizing in cash probably more than $150,000.

⬯See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This money seems to have gone as easily as it came. The plaintiff provided liberally for defendant while the money lasted, but by a series of unfortunate investments it was soon dissipated. Among other interests acquired by plaintiff in Alaska was a one-quarter interest in the certain mining claims mentioned in the plaintiff's complaint, known as the "U. G. I. claims," for which patent was acquired in the year 1903. In the year 1906 the plaintiff duly executed, delivered, and transferred to the defendant a deed for said one-quarter interest in said U. G. I. claims, and the same was duly recorded in the proper recording office. There was a good and valuable consideration for the making of this deed, which probably would have been good even as against creditors.

In June, 1908, the plaintiff was in the city of Chicago, endeavoring to negotiate a mining deal of all his mining interests, and desired to include therein the said one-quarter interest in the U. G. I. claims, owned by his wife. He wrote her, requesting that she send him a deed, which she did. A few days thereafter, without having transferred or conveyed the said interest in said mining claims, he returned said deed to defendant at San Diego. The plaintiff never saw said deed again, and defendant testified that she destroyed it.

Plaintiff's action was begun by the filing of the complaint in this court on the 17th day of April, 1913, praying:

"That a decree of this court be entered, quieting his [plaintiff's] title to his said undivided interest in and to each of the aforesaid mining claims and premises and adjudging that he, the plaintiff, is the sole, legal, and equitable owner thereof, * * * and that the said defendant be forever enjoined from asserting any claim whatever thereto," and for general relief.

The defendant by her answer sets up that there was no consideration for the transfer of said property to the plaintiff, that it was not her intention to transfer the same, and that plaintiff was merely acting as her agent in the attempt to sell said property, and that said deed was to serve only as an authorization to make the sale.

Demurrer was interposed by defendant to plaintiff's complaint, which was overruled, and demurrer was likewise interposed by plaintiff to defendant's answer, which was likewise overruled.

· · L. V. Ray, of Seward, for plaintiff.
Lyons & Ritchie and J. L. Reed, all of Valdez, for defendant.

BROWN, District Judge. The sole question seems to be one of law, to wit: What is the effect of the making of the deed by defendant to plaintiff in June, 1908? For the purpose of ascertaining the intention of the parties in this transaction a great deal of testimony was admitted, which might not ordinarily be admissible to contradict a written instrument. A good many letters from the plaintiff to the defendant were offered by defendant and received in evidence, which, meeting the requirement of the statute of frauds, seem to bind the plaintiff and estop him from making a contrary claim at this time. In the event that the plaintiff had retained said deed, executed by defendant in the year 1908, and the defendant had brought an action to have plaintiff declared a trustee, holding said property in trust for herself and children, the letters written by plaintiff to defendant would no doubt establish such a trust.

In Commentaries on the Law of Evidence in Civil Cases, by Burr W. Jones, vol. 3, § 418, it is said:

"By the seventh and eighth sections of the statute of frauds it is provided that declarations or creations of trusts or confidences in lands shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing; otherwise, they shall be void. The exception is made, however, as to trusts or confidences resulting by the implication or construction of law. In considering the class of express trusts referred to in this statute, it is to be observed that the trust need not be created by writing. It is a compliance with the terms of the statute if the trust be manifested and proved by writing, and, if so proved, it may be created by parol; and it is sufficient to show the existence of the trust by written evidence. The statute of frauds, requiring express trusts to be manifested or proven by writing, was enacted for the benefit of those claiming title under deeds or other instruments absolute on their face, and not for the benefit of those seeking to defeat the operation of such deeds by showing that they were made upon trusts not appearing upon their face. In all cases, where a deed or instrument of conveyance is absolute on its face, and the grantor or his assignee seeks to defeat its operation by showing that the deed, though absolute in form, was, in fact, executed upon certain express trusts, the grantee may invoke the protection of the statute by requiring proof of these alleged trusts to be made in writing. The writing need not be in the form of an agreement be-

tween parties; and any writing subscribed by the party will be sufficient, if it contain the requisite evidence."

In the letter dated June 21, 1908 (Defendant's Exhibit O), the plaintiff, referring to this deed, says:

"And I promise you that nothing shall be done with the paper [referring to this deed] without your knowledge and consent."

In October, 1911, the plaintiff wrote defendant (Defendant's Exhibit T) as follows:

"You have the interest in the U. G. I. claims, and this you must guard well and closely, for the sake, not of yourself, but for my children."

On January 10, 1910, plaintiff wrote defendant (Defendant's Exhibit V) as follows:

"I signed the contract only as a stockholder of the H. E. Company [Hubbard-Elliott Company], and in no way do so as an interested party in the U. G. I. property. My signature to the contract was followed by an avowal of no interest in these properties, and that my signing was not to be so construed, or my signature to the contract would be withdrawn."

On April 19, 1912, plaintiff wrote defendant (Defendant's Exhibit X) as follows:

"I can see plainly that within a very few years, perhaps it will be less than five years from now, when, if you are careful and steadfast, you can turn the U. G. I. interest into an immense fortune for yourself and the children. It must be done either by direct sale for very big money, or your interest fully protected in any combination you may make with others holding the balance of the property. At least never allow the title of that property to pass out of your hands without at least $75,000 in cash and an exceedingly good stock interest."

On February 22, 1913, plaintiff wrote to defendant (Defendant's Exhibit AA) as follows:

"The one-fourth interest in the U. G. I. which you deeded to me, I have asked for simply to do with it for you and the children. At no time nor under no circumstance have I ever had a thought respecting this property, other than to do with it for my children."

He then in this letter suggests that he can best handle the property and says:

"All I want to say in relation to this matter is to do as your conscience and heart so dictates. If you think it is all yours, then retain

it. \* \* \* I want you to know that I shall be content and accept your decision, whatever it may be, if you can on your own initiative."

It would seem that no language could be stronger, as indicating the purpose and intent of the plaintiff, over his own signature, to treat this property as belonging to the defendant, as he himself says, for the benefit of their children. The fact of his long delay of nearly five years in asserting the right claimed by him raises a strong presumption against him.

"Delay is always a suspicious circumstance, and if prolonged may create a presumption against the validity of a right which might otherwise be deemed established." 16 Cyc. 160.

If the plaintiff was morally and justly entitled to some share in the property in controversy, the time for asserting it was during the divorce proceedings had between himself and defendant. The defendant's home, ever since their marriage 25 years ago, has been in San Diego, Cal. If the plaintiff chose to acquire a different legal residence for himself, so he could and did maintain the divorce action against the defendant, he cannot now claim that he was unable in that suit to settle any questions of property right by reason of not acquiring jurisdiction over the property. He chose his own forum, and must abide the result. He freely and voluntarily brought about the present status between himself and his former wife as to the property involved, and this court should not be called upon to disturb this situation. There is nothing that appeals to a court of equity, moving it to grant relief to a plaintiff who has created a condition, by his own voluntary act, which was for a most commendable purpose (that of the future care and protection of his own children), where he has frequently affirmed this purpose in writing during a period of seven years, at the end of which time he desires to annul and disaffirm all of these, his own declarations. Every principle of estoppel and equity is against such a proceeding.

I am forced to the conclusion that the deed given by plaintiff to defendant in 1906 was a good and sufficient conveyance of the property involved in this case and title thereto has ever since been vested in the defendant; that the deed executed by defendant to plaintiff in June, 1908, was never in a

legal sense delivered to plaintiff, and it was never the intention that the title to said property should pass to or vest in plaintiff.

Findings and decree may be prepared accordingly.