## Kentucky River Coal Corporation v. Sumner, et al, By, Etc.

(Decided June 2, 1922.)

### Appeal from Letcher Circuit Court.

1. Equity—Bona Fide Purchaser—Notice of Prior Equities.—In order for one to be entitled to the equities of a bona fide purchaser without notice his purchase must be for a valuable consideration and it must be paid before he receives notice of prior equities, otherwise he will not be entitled to priority.

2. Equity—Purchaser's Notice of Outstanding Interest.—If a purchaser dealing with property, the record title of which appears to be complete, has information of extraneous facts sufficient to put him on inquiry respecting some outstanding interest, claim or right, and he omits to make proper inquiry, he will be charged with notice of all the facts which he might have learned by means of reasonable inquiry.

3.   Equity—Execution of Deed Under Prior Contract—Beginning of
     Equities.—While the execution of a deed of conveyance pursuant
     to the terms of a prior obtained contract might relate back to the
     date of the latter so as to fix the equities of the purchaser as of
     that date, still he will obtain no greater equities through the exe-
     cution of the deed than he obtained through his contract and if he
     failed to pay the consideration at that time but did so when the
     deed was executed, his equities will date from that time.
4.   Clerks of Courts—Indexing Deeds.—It is the duty of county clerks
     to index the recording of deeds and other instruments, and if they
     are lodged for record and the fees paid, or if they are actually
     recorded, a subsequent purchaser of the property acquires no
     rights over the beneficiary in the non-indexed instrument.
5.   Alteration of Instruments—Materiality—Evidence.—Neither a deed
     or other writing, regular and formal on its face, nor any part of
     it will be held as a forgery or as fraudulently altered, except upon
     the clearest evidence and where one witness testified that the
     deed as originally written and executed was as it now appears, and
     the draftsman testified that he had no recollection about it but
     that he was under the impression that he added other grantees
     after one of the grantors signed and acknowledged it, but which
     statement he modified after seeing the original deed, the evi-
     dence is wholly insufficient to sustain the alleged fraudulent al-
     teration

     MORGAN & HARVIE, P T. WHEELER and W O. DAVIS for
appellant.

     D. D. FIELDS & DAY and R. MONROE FIELDS for appellees.


OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action was filed by May, Robert, William and
Dennis Sumner, infants under the age of fourteen years,
by their guardian, F. F. Sumner, against the appellant
and defendant below, Kentucky River Coal Corporation,
to enjoin it from trespassing on a tract of land in Letcher
county containing 112.8 acres which plaintiffs alleged they
owned by virtue of a deed executed to their mother and
them by their grandfather and grandmother, William and
Dianah McIntire, on November 26, 1910. They alleged
that defendant claimed to be the owner of the minerals
under the land by virtue of a contract executed by the
two McIntires and the father and mother of plaintiffs to
the Swift Coal & Timber Company on March 8, 1911,
which was perfected by a deed executed by the same
parties to the same company on May 5, 1911, at which
time the balance of $1,103.00 of the agreed purchase price
of the minerals was paid by check issued to plaintiffs'

father, the other $25.00 of the consideration having been paid in the same way and to the same person at the time of the execution of the purchase contract on March 8, 1911. The prayer of the petition asked that defendant, who is the vendee of the Swift Coal & Timber Company, be enjoined from attempting to exercise any of the rights alleged to have been acquired under the before mentioned contract or deed to the Swift Coal & Timber Company; that each of them be cancelled and held for naught, and that plaintiffs be quieted in their possession. The answer, as amended, denied plaintiffs' title and alleged that defendant and its immediate vendor, Swift Coal & Timber Company, were innocent and *bona fide* purchasers of the mineral without notice, either actual or constructive, of the deed under which plaintiffs claim title; and, further, that such deed had been materially and fraudulently altered after its execution by the McIntires by writing therein immediately after the name of Victoria Sumner as grantee the words "and her children," thus making it appear that the grantees were "Victoria Sumner and her children," when in truth and in fact the mother was the only grantee in the deed when it was executed, which, if true, would deprive plaintiffs of any interest in the subject matter of the litigation and defendant would be vested with full title thereto under the deed above mentioned of May 5, 1911. Appropriate pleadings made the issues and after the taking of considerable testimony, a large portion of which is wholly incompetent and irrelevant, the court upon submission sustained plaintiffs' contention and by its judgment granted them the relief they sought, to reverse which defendant prosecutes this appeal.

It is vigorously argued by counsel (1), that at the time of the procuring of the contract of March 8, 1911, which was afterwards perfected by the deed of May 5, 1911, the deed under which plaintiffs claim was not recorded, nor had it been legally lodged therefor, and hence defendant's vendor was a *bona fide* purchaser for value without notice, either actual or constructive, and it thereby obtained title to the minerals, which prevailed over plaintiffs' title, if any; (2), that (a) although plaintiffs' deed was recorded at the time of the execution of the deed in defendant's chain of title of May 5, 1911, that deed related back to the date of the contract of March 8, pursuant to which it was executed, and (b) that although plaintiffs' deed was on record May 5, 1911, and had been

since April 22 before then, it was not indexed and could not and was not found by an examination of the index book in the county court clerk's office, and (3), that the deed under which plaintiffs claim to own the title was fraudulently altered as heretofore indicated. These various contentions will be disposed of in the order named.

1. One of the essential requisites to make a subsequent purchaser without notice a *bona fide* or innocent one so that his equity will prevail over a prior title of which he had neither actual nor constructive notice, is that his purchase should be for a valuable consideration which has been paid by him. 27 R. C. L. 703-704; 39 Cyc. 1701-1702; Hardin's Executors v. Harrington, 11 Bush 367; Winlock v. Mundy, 156 Ky. 806; Rader v. Shaffer, 186 Ky. 802, and many other cases cited in the notes to the texts and referred to in the opinions in those cases. If, therefore, there were no other objections to the contention of counsel the rule referred to would not entitle his client to prevail because, as we have seen, the consideration for the acquisition of the minerals was not paid until May 5, 1911, some three weeks after plaintiffs' deed was recorded and from which date defendant was charged with constructive notice and which its vendor possessed at the time the latter paid practically all of the consideration, the $25.00 paid at the time of the obtention of the contract for the deed being a mere nominal part of the consideration, and, as recited therein, was only in consideration of that contract. Independently, however, of that fact, which in itself is sufficient to dispose of the case, we think it perfectly clear from the evidence that the Swift Coal & Timber Company had actual knowledge of the deed under which plaintiffs claimed at the time it took its contract on March 8, 1911. The representative of that company who prepared and obtained that contract was L. W. Fields. He knew that Mr. and Mrs. Sumner, the latter being a daughter of the McIntires, resided on the land in a separate house. He also knew, as he testified, that Mr. McIntire had been and perhaps at that time was engaged in dividing his land among his children and that the particular tract in question had been in some manner allotted to Mrs. Sumner, and for that reason he procured her and her husband to execute the contract and the McIntires to do so because he understood in some indefinite way that they had retained some interest (which they had), in the deed executed to Mrs. Sumner and her children. This much is practically acknowledged by Fields. How-

ever, Mr. Sumner testified that he told Fields at the time, not only of the existence of the deed, but that it was executed to Mrs. Sumner and her children, which fact is not denied by Fields, but he says that if he was so informed he did not at the time he testified have any recollection of it.    Even if it should be found that he was not so informed he admits knowledge of enough to put him and his principal, for whom he was acting, upon inquiry which, if diligently pursued, would have revealed the true facts. This principle of law has been so often announced and is so fundamental as relating to the doctrine of notice that we deem it unnecessary to encumber this opinion with reference to authorities and adjudged cases; however, some of the more recent ones from this court so holding are: Burdine v. White, 173 Ky. 158; E. K. Bonds & Co. v. Ford, 175 Ky. 827; Wells v. Derrickson, 184 Ky. 384, and May v. Chesapeake & Ohio Ry. Co., idem 493.    But, with the positive statement by Mr. Sumner as to the information he gave to Fields concerning the deed and with only a negative denial thereof by the latter authorized the conclusion that the correct terms of the deed were imparted to him and he was thus actually notified, independently of any duty to investigate.    It, therefore, necessarily results that none of the points relied on under ground (1), are available.

2.    In support of point (a) in ground (2), reliance is had on the case of Tennis Coal Co. v. Asher and Hensley, 143 Ky. 223, in which it is held that a subsequent deed taken pursuant to a prior contract of sale would relate back to the date of the contract and take precedence over an intervening equity, but in that case the *entire* valuable consideration *was paid* when the contract was entered into and the holding of the opinion under those facts conforms to the principles of equity as well as the rule hereinbefore discussed, and is therefore sound.    We have no such facts here, as we have seen, since the consideration was paid, not at the date of the contract relied on of March 5, 1911, but when the deed pursuant thereto was made on May 5, 1911.    Hence, the doctrine of the case relied on has no application to the facts of this one.

Neither is contention (b), under this ground maintainable.    Section 496 of the statutes requires certain writings, including deeds, in order to be valid as against subsequent *bona fide* purchasers and creditors to be recorded or lodged for record and the fees paid.    Section 513 imposes the duty upon the county court clerk to keep

in his office a book in which he is required to enter a cross index of all instruments recorded in his office pursuant to the provisions of section 496, but the statute nowhere requires the holder of such instrument to see to it that the clerk performs his duties as imposed by that section. His failure to keep the required index is an act of non-feasance for which *he* may be made liable to any one who may be damaged thereby, but the consequences of his dereliction will not be visited upon the one who has paid him the necessary fees for recording the instrument. This court has so held in a number of cases, among which are: Herndon v. Ogg, 27 Ky. L. R. 268; Smith v. Chapman, 153 Ky. 70; Title Guaranty Co. v. Commonwealth, 141 Ky. 570; Bentley v. Letcher County, 143 Ky. 585; Webb v. Austin, 22 Ky. L. R. 764, and Great Western Petroleum Corporation v. Samson, 192 Ky. 814. So that, the recording of the McIntire deed, under which plaintiffs claim title, on April 22, 1911, operated to give constructive notice to all persons after that time, notwithstanding the failure of the clerk to comply with his duty prescribed by section 513 of the statutes by properly indexing it; and since, as we have seen, plaintiffs' vendor paid the consideration after that time it must be charged with notice of plaintiffs' title and defendant cannot therefore shield itself under the doctrine of a subsequent *bona fide* purchaser for value.

3. The contention made under this ground is one purely of fact and for which we may say at the outset there is no substantial testimony to support. Plaintiffs' deed, which was executed as stated by the McIntires (each of whom, as well as Mrs. Sumner, are now dead), was prepared by and acknowledged before T. A. Dixon, a deputy county court clerk of the county. At the time he testified in chief, which was nearly eight years after the transaction, he did not have before him the original deed but only a copy of it certified by the county court clerk. He testified then that according to his recollection Mr. McIntire signed and acknowledged the deed in one room of the house and that he after that procured the signature and took the acknowledgment of Mrs. McIntire in the kitchen, at which time he inserted in the deed at her request the words "and her children" as a part of the grantees. The deed at the time it was acknowledged by Mrs. McIntire, according to his recollection as he then testified, was executed to Mrs. Sumner as the sole grantee. Later, and on cross-examination, he was shown the orig-

inal deed which was on a printed form and all of the writing therein except the signatures was made by him.   His attention was called to the fact that the words "and her children" immediately followed the name of their mother as grantees and is inserted in the usual way.   Also that in the blank form the printed letters "part" followed by a blank space appear and that he wrote immediately thereafter the letters "ies," so as to complete the word "parties" as indicating the grantees in the deed and that in the blank space preceding the words "heirs and assigns" in the habendum clause of the deed he wrote the plural possessive pronoun "their" instead of the singular feminine pronoun "her," so as to make the deed run "unto the parties of the second part *their* heirs and assigns," etc. He had stated in his testimony in chief that the only alteration he made in the deed, if any at all, in the kitchen was the insertion of the words "and her children."   After having his attention called to the matters indicated he stated that he was quite convinced that the entire deed was prepared and written as it now appears at the time it was signed and acknowledged by Mrs. McIntire and that the insertion of the words "and her children" therein was made at the instance of Mrs. McIntire, who held the title to the land, but that it was done before either of the vendors executed it.   In addition to all this, Mr. Sumner testified positively that the words "and her children" were written in the deed, as including the grantees who "were parties of the second part," before it was signed or acknowledged by any one.   In further substantiation of the genuineness of the conveyance as it now appears the original deed, which has been sent with the record, has been examined by us and we find nothing thereon to indicate in the slightest that there has been any alterations made therein at any time.   It all appears not only in the same handwriting but regular and duly formal. Surely it can not be successfully contended, under the evidence and the proven circumstances, that a court of equity would uphold the alleged forgery or fraudulent alteration and thereby deprive these four infant plaintiffs of their small estate bestowed upon them by their grandparents.

Other collateral questions are discussed in briefs of counsel, but the above conclusions dispense with the necessity of any reference to or discussion of them.   There being no error found in the judgment, it is accordingly affirmed.