**Robin Floyd LOWN, Appellant,**

v.

**NICHOLS PLUMBING AND HEATING, INC., Appellee.**

**No. 5087.**

Supreme Court of Alaska.

Oct. 16, 1981.

William G. Royce and Richard H. Wollenberg, Sitka, for appellant.

Paul M. Hoffman, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.*

MATTHEWS, Justice.

In February 1978, the appellee, Nichols Plumbing and Heating, Inc. sued to quiet title to a parcel of land in the Chilkat Acres subdivision, located at Swanson Harbor, twenty-six miles west of Juneau. Appellant Robin Lown answered and counterclaimed, asserting that he was the fee simple owner of the land in question. The parties moved for summary judgment and the court ruled in favor of Nichols. Lown has appealed. We affirm.

On January 1, 1965, Walter and Carol Reams executed a promissory note to the Coast Small Business Investment Company, a California corporation. On December 14, 1965, as security for this note, the Reams signed a deed of trust covering several parcels of land, including the parcel at issue.

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

Although this land lies within the Juneau recording district, the deed of trust was originally recorded in Petersburg, and was not correctly recorded in Juneau until May 1967.

Eight days after he executed the deed of trust, Walter Reams executed and recorded a deed conveying the land to J. J. Lown, appellant's father. However, Reams did not tell J. J. Lown about this conveyance until early 1966. Shortly thereafter, the two visited the property. According to Lown, Reams told him that he had deeded Lown the property to induce him to build a lodge on it, so that the surrounding parcels retained by Reams would be saleable as cabin sites. Lown stated that he decided to accept the conveyance and to proceed with the lodge project in the summer of 1966.

On a second trip to Swanson Harbor that summer, Reams and Lown set up a wall tent on the land deeded to Lown. This tent was to be used in the initial stages of the lodge construction. Because they were unable to come up with construction money, however, nothing further was done in 1966.

In June 1967, Lown and Laura Bailey moved to Swanson Harbor and undertook construction of a 48' × 64' lodge. Their building and living supplies were paid for by Reams and delivered by him by boat from Juneau. However, neither Lown nor Bailey were paid for their work. After Reams' death in the summer of 1968 Lown and Bailey were forced to abandon construction because of their lack of money and inability to get supplies.

In July of 1967, Coast began non-judicial foreclosure pursuant to the terms of the deed of trust. Notice of Reams' default was mailed to Lown at his Juneau address, but he evidently did not receive this notice, although Reams had apparently been bringing his mail to Swanson Harbor. Reams was served personally with the notice of default, but never told Lown about it. The foreclosure sale took place on November 7, 1967, and Coast bought all the property listed in the deed of trust for the amount owed by Reams.

In December 1967, Lown, at the instigation of Bailey, finally asked Reams to deliver the deed to the property. Reams did so and explained to Lown that he had taken a loan on the rest of the property, but that the section deeded to Lown was unencumbered. Reams did not mention that the foreclosure sale had already occurred.

Lown deeded the land to Bailey and his son Robin in 1969. In 1975, Bailey deeded her interest in the land to Robin. Coast conveyed its interest to Nichols in April 1976, about two years before commencement of this action.

AS 34.15.290, provides:

*Invalidity of unrecorded conveyance.* A conveyance of real property in the state hereafter made, other than a lease for a term not exceeding one year, is void as against a subsequent innocent purchaser or mortgagee in good faith for a valuable consideration of the property or a portion of it, whose conveyance is first duly recorded. An unrecorded instrument is valid as between the parties to it and as against one who has actual notice of it.

The question in this case is whether J. J. Lown was, to use the terms of the statute, an innocent purchaser in good faith for a valuable consideration, before Coast's deed of trust was properly recorded in Juneau in May of 1967. If he was not, Robin Lown cannot claim priority of title under this statute. Instead, the general rule that a "purchaser at a deed of trust sale takes land subject only to those encumbrances which were created before execution of the trust deed . . . ." [1] governs.

J. J. Lown was initially a donee rather than a purchaser. By working to build a lodge on the property he substantially relied on his grant. Arguably, he may be said to have then given valuable consideration and perhaps should be considered to be a purchaser for the purposes of AS 34.15.290 as

1. *Alaska Laborers Training Fund v. P & R Enterprises, Inc.*, 583 P.2d 825, 826 (Alaska 1978) quoting *Lynch v. McCann*, 478 P.2d 835, 836–37 (Alaska 1970).

of the time of his substantial reliance.[2] If so, the statute cannot be construed to protect him because his substantial reliance did not take place until June of 1967, after Coast's deed of trust was properly recorded.

This result is well supported by authority. Where a purchase is made, but the purchaser does not give substantial consideration until after a prior conveyance is recorded, the purchaser takes subject to the prior conveyance.[3]

This does not mean, as the dissent suggests, that one making installment payments must check the title at the recording office before making each payment. All that is required is an initial payment of substantial consideration, or a promise to pay which has been relied upon by a third person.[4] Part of the policy of the rule is based on a change of position in reliance on the absence of record or actual notice. As the court stated in *La Fon v. Grimes*:

> The principle upon which the doctrine of innocent purchaser for value rests, like equitable principles in general, is not a hard and fast rule of narrow application, but one to be liberally and equitably applied. Under it relief is denied to a purchaser without notice who has not paid value, on the ground that his equity arises, not out of his mere lack of notice, but out of injury to him, through an innocent change of position to his prejudice. It is therefore denied where the matter of the payment remains executory between purchaser and seller, and there is no irrevocable change of position. It is granted where either the buyer has paid the purchase price or has entered with third persons into a binding obligation with regard to it, whether the obligation arises out of the execution or the assumption of negotiable promissory notes, or other form of undertaking which the buyer is able to perform, and from which he cannot in law withdraw. *McAnally v. Panther* (Tex.Civ.App.) 26 S.W.2d 478; *Essex v. Mitchell* (Tex.Civ.App.) 183 S.W. 399; *Tobin v. Benson* (Tex.Civ.App.) 152 S.W. 642; *Sparks v. Taylor*, 99 Tex. 411, 90 S.W. 485, 6 L.R.A. (N.S.) 381; *Clemmons v. McDowell* (Tex.Civ.App.) 5 S.W.2d 224.

86 F.2d 809, 812–13 (5th Cir. 1936).

Since J. J. Lown, at best, stood in the position of a subsequent purchaser for valuable consideration only after Coast's deed of trust was properly recorded, the deed of trust had priority over his deed.

Accordingly, the judgment is AFFIRMED.

**2.** We are aware of no cases holding that a donee who spends money in reliance on a deed of gift is protected under recording statutes similar to AS 34.15.290. Generally, donees are not regarded as receiving protection. *See* 6A R. Powell, *The Law of Real Property* § 915 at 284 (1980). However, *see also* Note, 41 U. of Colo.L.Rev. 290, 292–93 (1969) where a proposal is made for statutory reform recognizing the interest of a relying donee.

**3.** *E. g.* *La Fon v. Grimes*, 86 F.2d 809, 812 (5th Cir. 1936); *Givens v. Turner*, 272 Ky. 211, 113 S.W.2d 1166, 1170 (1938); 4 A. Casner, *American Law of Property* § 17.10 at 557 (1952); 8 G. Thompson, *Real Property* §§ 4321, 4322, 4323 (J. Grimes rev. ed. 1963); R. Powell, *supra* note 3 § 916 at 288; 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* §§ 750, 751, 755 (5th ed. 1948).

**4.** A broad reading of *Givens v. Turner*, *supra*, might lead to a contrary result, but the Court of Appeals of Kentucky has since opted for a narrower reading. In *Young v. Adams*, the court stated that:

> It is also contended that appellant's status as an innocent purchaser is destroyed because part of the purchase price was not paid until after the deed from H. C. Fields to Theo and Joseph Fields was recorded. In the deed from Orpha Moore to appellant, a vendor's lien was retained to secure a part of the purchase price. This lien was released by marginal endorsement on May 5, 1938. We have held that a purchaser who obtains notice of an unrecorded conveyance before payment of the purchase price will not be considered as an innocent purchaser for value. *Kentucky River Coal Corporation v. Sumner*, 195 Ky. 119, 241 S.W. 820; *Givens v. Turner*, 272 Ky. 211, 113 S.W.2d 1166. In the *Givens* case, we said, although the statement was not material to the decision, that if any of the purchase price is paid subsequent to notice of the first conveyance, the second will not be considered an innocent purchaser. We doubt that the rule is as broad as the opinion would indicate, but it is not necessary to turn this case on a reexamination of that question. 267 S.W.2d 85, 87 (Ky.App.1954).

RABINOWITZ, C. J., dissenting.

COMPTON, J., not participating.

RABINOWITZ, Chief Justice, dissenting.

The superior court relied upon three separate grounds in granting summary judgment in Nichols' favor and in this appeal Nichols has presented a fourth theory on which the summary judgment may be upheld. I conclude that summary judgment was inappropriate on all four grounds.

The superior court found that there was no delivery of the deed by Reams to J. J. Lown until December of 1967, by which point Nichols' interest had become paramount by virtue of the recording of Coast's deed of trust in May of 1967; that the deed from Reams to J. J. Lown on December 22, 1965 was fraudulent in that it was an effort to hinder or defraud the creditor in whose favor Reams had made the deed of trust just eight days earlier, and as such was void under AS 34.40.010; and that the subsequent foreclosure of the deed of trust effectively transferred to Nichols' predecessor all the interest that Reams had in the property on December 14, 1965, when the deed of trust was made. Under any of these theories, the superior court ruled, Nichols would prevail; the issues of fact raised by Lown were immaterial to all three conclusions.

On appeal, Nichols has presented a new theory[1] on the basis of which, it argues, the superior court's ruling can be upheld: that J. J. Lown had not tendered any consideration to Reams before he was put on constructive notice of Coast's interest in the land by the May, 1967 recordation in Juneau, and that therefore Coast's deed of trust, the first executed by Reams, is determinative of ownership. I will discuss these theories seriatim.

A. Delivery of the Deed.

Under the common law a deed had to be "delivered" from grantor to grantee before it became effective. *See* 6A R. Powell, *The Law of Real Property* ¶ 891, at 81–95 (Rohan rev. ed. 1980). Although there is no statute or decision in Alaska specifically adopting the delivery requirement, I assume, as the parties have assumed, that the requirement does apply here.[2]

However, it is hornbook law that a deed need not be physically transferred to the grantee for there to be a valid delivery. Rather, delivery is a term of art for an intent by the grantor that ownership of the property be transferred to the grantee. 6A R. Powell, *supra*, at 81–96; *Reed v. Reed*, 261 Or. 281, 493 P.2d 728 (1972). In this case there are two rebuttable presumptions about delivery that conflict: that delivery presumptively occurs when a deed is recorded, and that delivery presumptively has not occurred when the deed remains in the grantor's possession. 6A R. Powell, *supra*, at 81–104, 81–106.

Given this law on delivery, I conclude that the superior court erred in granting summary judgment on the first issue. On the summary judgment motion Nichols had to establish that there had been no delivery; *i. e.*, that Reams had had no intention of conveying the property to J. J. Lown prior to May, 1967.[3] On the evidence in the record I do not think that Reams' intention can be divined. As we stated in *Wilcox Associates v. Fairbanks North Star Bor-*

---

**1.** As the prevailing party on summary judgment below, Nichols may advance new theories on appeal in support of its judgment. *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961).

**2.** This view is implied by *Bennis v. Alexander*, 574 P.2d 450 (Alaska 1978). In its brief below, Nichols cites a very old Alaska case, *Hubbard v. Hubbard*, 5 Alaska 478 (Dist.Ct.1916), recognizing the requirement.

**3.** Nichols has apparently lost sight of the fact that it carries the burden of proof in a summary judgment motion. The heading of its argument on delivery reads, "The defendant was

unable to show that Walter Reams delivered property to J. J. Lown prior to May of 1967." This places the burden of proof on the wrong party. Nichols claims that "there is no significant event indicating a turning over of title and ownership." I cannot term the recording of a deed insignificant. Nichols denigrates this recording as an attempt by Reams to defraud Coast, his creditor. But this clearly raises a question of fact; as discussed *infra*, it is far from obvious that Reams' intentions were dishonest.

*ough*, 603 P.2d 903, 906 (Alaska 1979) (footnote omitted), "[s]ummary judgment is generally inappropriate when a party's state of mind is at issue." Although Reams is not a party here, the same consideration applies to his state of mind, as it is a material fact.

### B. Fraud by Reams.

The superior court decided that Reams' deed to J. J. Lown constituted "an effort to hinder or defraud the creditor in whose favor Reams had made the deed of trust just eight days earlier." Therefore, the court concluded, the deed was void. Robin Lown argues that his father was nevertheless protected under AS 34.40.100, which states that fraud by a grantor does not impair the title of a purchaser for valuable consideration without notice of the fraud.

I think there were genuine issues of material fact both as to Reams' intent to defraud and as to J. J. Lown's knowledge or lack thereof of any fraud. According to J. J. Lown's deposition, Reams told him that the land he had deeded to Lown was unencumbered, and that the deed of trust covered the rest of the Swanson Harbor lots. This was clearly not the case;[4] however, it does at the very least highlight an issue of fact as to J. J. Lown's knowledge of any fraud on the part of Reams, and as to whether Reams' state of mind involved an intent to defraud or an honest misunderstanding as to the specific portion of land included in the deed of trust.

In order to resolve this issue of fact in favor of Nichols, I would be forced to draw an inference in its favor. Since, on a summary judgment motion, all inferences are to be drawn against the movant, *Clabaugh v. Bottcher*, 545 P.2d 172, 175 n.5 (Alaska 1976), summary judgment cannot be based upon this premise.

### C. Deed of Trust Foreclosure.

Although the court below ruled that the provisions of AS 34.20.090[5] provided an independent ground for summary judgment, Nichols has abandoned that position before this court, instead arguing that since the trial court determined that delivery had not occurred with respect to the Reams-Lown deed until December of 1967, the required conclusion was that all title became vested in Nichols' predecessor in title at the sale and execution of the trustee's deed to Coast on November 7, 1967. Were the court affirming the superior court's summary judgment as to delivery of the deed, this conclusion would logically follow; but as I have concluded above that there were disputed issues of material fact which preclude summary judgment on the delivery issue, the premise of Nichols' argument is removed and the statute cannot provide an independent ground for affirmance.

---

4. Nichols urges us to disregard J. J. Lown's affidavit to the extent that it contains legal conclusions and statements inconsistent with his deposition testimony. Nichols does not, however, specifically object to this portion of the affidavit, and it does not involve a legal conclusion or an inconsistency. Nor do I perceive a hearsay problem with this evidence, as it is not being offered to prove that the land was in fact unencumbered, but only as evidence of Reams' and J. J. Lown's respective states of mind.

5. AS 34.20.090 reads:
   *Sec. 34.20.090. Title, interest, possessory rights and redemption.*
   (a) The sale and conveyance transfers all title and interest which the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest he may have acquired before the sale, and the party executing the deed of trust, his heirs and assigns have no right or privilege to redeem the property, unless the deed of trust so declares.
   (b) The purchaser at a sale, his heirs and assigns are, after the execution of a deed to him by the trustee, entitled to the possession of the premises described in the deed as against the party executing the deed of trust or any other person claiming by, through or under him, after filing the deed of trust for record in the recording district where the property is located.
   (c) A recital of compliance with all requirements of law regarding the mailing or personal delivery of copies of notices of default in the deed executed under a power of sale is prima facie evidence of compliance with the requirements. The recital is conclusive evidence of compliance with the requirements in favor of a bona fide purchaser or encumbrancer for value and without notice.

D. AS 34.15.290.

Nichols' new theory is that Lown's invocation of AS 34.15.290 [6] cannot be sustained on these facts because, even assuming arguendo that the deed had been "delivered" in 1966, J. J. Lown had given no consideration until he started building the lodge in June of 1967; Small Coast Business Investment had recorded in May of 1967; since J. J. Lown should have checked the title records before parting with consideration, he is chargeable with the knowledge of that deed of trust and thus he is not entitled to the protection of AS 34.15.290. [7]

There is no doubt that this would be the correct ruling had J. J. Lown received actual notice of the deed of trust in May of 1967—i. e., had Small Coast Business Investment, which should have found the Reams-Lown deed at the time it recorded the deed of trust, immediately informed Lown of the deed of trust—because then J. J. Lown would have lost the status of innocent purchaser in good faith for valuable consideration, as to any consideration he transferred after the date of that actual notice (which, in this case, would mean all of the consideration). [8] The statute itself specifies that "[a]n unrecorded instrument is valid as between the parties to it and as against one who has actual notice of it." AS 34.15.290. There is no dispute that such actual notice was not given to J. J. Lown; Nichols urged the court to reach the same conclusion, however, on theories of constructive notice and of inquiry notice.

Under the constructive notice theory, Nichols urges adoption of a rule that "a title search is necessary through the date when full consideration is paid in order to qualify the transferee as an innocent purchaser for a valuable consideration without notice." Were this rule adopted it is clear that Nichols would prevail here, since it recorded its deed of trust a month before the initial transfer of consideration, and long before full payment (which, indeed, never occurred, as the lodge remains uncompleted).

However, I find that a rule holding that the status of "innocent purchaser in good faith for a valuable consideration" can be destroyed by subsequent constructive notice, as well as subsequent actual notice, of a prior unrecorded third party interest, would be essentially unworkable. In most such transfers of land, including this one, consideration is conveyed over a long period of time. The general rule is that when the purchaser receives actual notice of a third party's prior unrecorded interest, the purchaser has the status of "innocent purchaser in good faith for a valuable consideration" only to the extent of payments made before he becomes "infected" with notice, and is entitled only to a lien on the land as security for reimbursement for those pay-

---

**6.** AS 34.15.290 reads:

*Invalidity of unrecorded conveyance.* A conveyance of real property in the state hereafter made, other than a lease for a term not exceeding one year, is void as against a subsequent innocent purchaser or mortgagee in good faith for a valuable consideration of the property or a portion of it, whose conveyance is first duly recorded. An unrecorded instrument is valid as between the parties to it and as against one who has *actual notice* of it.

**7.** Nichols raises the same point in connection with AS 34.40.100, which protects "the title of a purchaser *for a valuable consideration* unless it appears that the purchaser had previous notice of the fraudulent intent of his grantor, or of the fraud rendering void the title of the grantor." (Emphasis added.)

The parties have not, on this appeal, raised any arguments concerning the application of the Statute of Frauds to the Reams-Lown con-

tract. Since any violation of the Statute of Frauds would render the oral contract voidable, not void, and neither party chose to void it (*see* 3 W. Jaeger, Williston on Contracts § 527, at 719 (3d ed. 1960)); since unenforceability of the contract under the Statute of Frauds can generally be taken advantage of only by parties to the contract or those in privity with them (*see* 2 A. Corbin, Corbin on Contracts § 289 (1950)); and since J. J. Lown's promise to build a lodge might very well have been enforceable after conveyance of the land to him (*see id.* at § 419), I think that the parties and the court below properly did not discuss the Statute of Frauds here.

**8.** Lown's counsel conceded at oral argument that J. J. Lown's activities on the land during the summer of 1966 are not to be construed as part of the consideration; construction of the lodge did not begin until June of 1967.

ments.[9] Were this rule extended to constructive notice, a purchaser would have to re-check the title records before each and every payment to insure that he was still "in good faith" in making that payment. I regard this as unduly burdensome.

A less restrictive rule would require an additional search only before the initial transfer of consideration. However, I see no valid reason for imposing such a duty absent unusual circumstances. Where, as here, a third party tardily records an instrument between the time of delivery of the subsequent purchaser's deed[10] and the first transfer of consideration under that subsequent conveyance, I think it is more reasonable to place the burden on that third party to provide the purchaser with actual notice, thereby destroying the purchaser's status as an "innocent purchaser in good faith for a valuable consideration," rather than requiring that purchaser to re-check for constructive notice.

Although I realize that "on this question different conclusions have been reached," Annot., 109 A.L.R. 163, 172 (1937), I am persuaded by the reasoning in *Lowden v. Wilson*, 233 Ill. 340, 84 N.E. 245 (1908), which was decided under a race-notice statute like Alaska's. In that case, as here, the grantor made two conveyances; the prior grantee initially failed to record the deed; the subsequent grantee received and recorded the deed; then the prior grantee tardily recorded his deed, after the recordation of the subsequent conveyance, but before consideration had been transferred under that subsequent conveyance. There, as here, the subsequent grantee had no actual notice, and thus the prior grantee was forced to argue that the subsequent purchaser had to show that he paid the entire purchase price before receiving constructive notice of the prior conveyance. The court rejected this argument, emphasizing that one of the purposes of the recording statute was to protect subsequent purchasers against prior deeds or mortgages not recorded, and that a recordation could function as constructive notice only to those who subsequently acquired some interest in the property, not to those who had acquired their interest and recorded their conveyance previously. I also think it significant that AS 34.15.290 requires actual notice in providing that an unrecorded instrument can be valid as to one not a party to the conveyance in that instrument.

Perhaps realizing the difficulties inherent in the constructive notice argument, Nichols' counsel at oral argument relied much more heavily on the inquiry notice argument. He argued that the strange circumstances of the transfer, as explained to J. J. Lown in 1966, should have prompted some inquiry whether there were underlying reasons for the recordation of the deed prior to the property's actual having been offered to J. J. Lown.

I have reservations whether this would be sufficient to trigger inquiry notice. The case at bar does not present a situation as compelling as that in *Modrock v. Marshall*, 523 P.2d 172 (Alaska 1974), in which we held that a purchaser was put on inquiry notice by the fact that the seller's ex-husband was still living in the house which the wife was selling. Especially since the superior court made no ruling on this point, I cannot say that there was no genuine issue whether the manner of the conveyance was unusual enough to have put J. J. Lown on inquiry notice.

However, I need not express any opinion as to whether the circumstances should have triggered inquiry notice. If that was the case, then J. J. Lown was put on inquiry notice as of early 1966, the point at which Reams explained to him the terms of the

---

9. *See* 6A R. Powell, The Law of Real Property ¶ 916, at 288 (Rohan rev. ed. 1968).

10. I would reverse the superior court's ruling that summary judgment was appropriate because no delivery was made until after May of 1967. Here, I am assuming that delivery was made at the time Lown contends it was, in the summer of 1966. Since it is a summary judgment in favor of Nichols which is being appealed, I must draw all inferences adversely to Nichols. I express no opinion as to the point at which the superior court might eventually have found that delivery actually occurred.

conveyance. J. J. Lown would then have been chargeable with whatever the title records revealed at that time; but, as Nichols' counsel conceded at oral argument, the title records at that time would have shown only the conveyance from Reams to Lown, not the Small Coast Business Investment deed of trust:

> [Inquiry] notice may be found where the later conveyee knew of facts or circumstances which should have induced further investigations, which investigations, if prosecuted, would have produced actual knowledge of the prior conveyance. When the facts suffice to impose the duty of investigation, the purchaser is charged with notice of what a proper investigation would have discovered, whether the investigation was, or was not, made. It follows that there is no 'notice' when either a reasonable inquiry reveals nothing, or a search, though not conducted, was certain to be futile.

6A R. Powell, The Law of Real Property 916, at 289–90 (Rohan rev. ed. 1968) (footnotes omitted). Here, since the search of the title records in Juneau, although not conducted, was certain to be futile, any triggering of inquiry notice does not change my analysis of the case.[11]

Since I am convinced that there are genuine issues of material fact which must be resolved in this case, I would reverse the grant of summary judgment.

11. At oral argument, Nichols' counsel contended that J. J. Lown should have asked Reams about any prior conveyances in 1966, and that, had he so inquired, Reams would have informed him about the deed of trust, and that in turn would have led J. J. Lown to investigate and discover that Reams had misinformed him as to the property covered by the deed of trust. These suppositions must be regarded as presenting genuine issues of material fact.