William **COHEN** et al., Plaintiffs,

v.

Marion **LOVITZ** et al., Defendants.

Civ. A. No. 3513–62.

United States District Court

District of Columbia.

June 9, 1966.

Mark P. Friedlander, Washington, D. C., for plaintiffs.

Philip W. Amram, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

The question presented in this case relates to contracts for the sale of real property. The problem is whether a vendee may recover damages for delay in addition to being awarded specific performance, if the vendor declines to convey the property; and, if so, what is the measure of damages for the delay. This subject is of novel impression in this jurisdiction.

The matter comes before this Court on cross-motions for summary judgment on a demand for damages for delay asserted by the vendee, in a counterclaim in which he asked both specific performance and damages. Specific performance was awarded. The claim for damages was severed for later consideration and is now to be determined.

The salient facts may be briefly summarized as follows. On August 31, 1962, Parkwood, Inc., the owner of a triangular parcel of land located at the junction of 14th Street and Vermont Avenue, in Washington, D. C., entered into a contract with one Norton Butler to sell it to

him for $1,000,000. Parkwood then conveyed it to the plaintiffs William Cohen and Charles Cohen, subject to Butler's rights under his contract of sale. Butler assigned his rights under the contract to the defendant Marion Lovitz.

The plaintiffs alleged that the defendant had committed an anticipatory breach, because of certain statements made by him, and on November 7, 1962 brought the present action for a declaratory judgment to adjudicate that the contract was cancelled and void. The time for the performance of the contract of sale arrived on December 4, 1962. The vendee was ready, willing and able to perform, but the vendor defaulted. The defendant vendee interposed a counterclaim to the plaintiffs' complaint praying for specific performance and for damages for delay. The matter came before Judge McGarraghy of this Court on the defendant's motion for summary judgment. The Court dismissed the complaint and granted judgment on the counterclaim for specific performance of the contract, severing and reserving the issue of damages for a later trial. It was held that the vendors' "failure and refusal to perform was without legal justification or excuse". A decree in accordance with these rulings was entered on December 13, 1963. An appeal was taken and the decision of the District Court was eventually affirmed on December 14, 1964. Accordingly, on February 5, 1965, the property was conveyed pursuant to the decree—over two years subsequently to the date on which the contract should have been performed.

The claim for damages, which was severed and reserved for later consideration, is now before this Court. As heretofore stated, both sides have moved for summary judgment. The vendee's claim for damages is based on the following facts. The purchase price of the property was $1,000,000. It is claimed by the defendants that he entered into a contract to re-sell it for $1,800,000. Because of delay in performance, however, the prospective purchaser withdrew from the

contract of re-sale, as he had a right to do. The defendant alleges that as a result of the delay he was deprived of an expected profit of $800,000. The defendant asserts further, that the market value of the property as of February 5, 1965 —the date on which it was conveyed to him—was $1,445,000, and submits an appraisal to that effect, which is not contradicted. He contends that his damages amount to the difference between $1,-800,000—the price of the prospective resale which fell through—and the market value of the property as of the date of conveyance, namely, $1,445,000. Accordingly he claims damages in the sum of $355,000. In addition he asks for interest on this amount from December 4, 1962. Finally, he claims reimbursement for counsel fees incurred by him in connection with this litigation.

■ The first question to be determined is whether the vendee is entitled both to specific performance and damages for delay, if the vendor refuses to convey the property in breach of the agreement, or whether the vendee in such an event is limited to receiving either specific performance or damages but may not have both. The overwhelming weight of authority is to the effect that the disappointed vendee under such circumstances may be awarded damages for delay in addition to being granted specific performance. This is the law in England. In Jaques v. Millar (1877) L.R. 6 Chancery Div. 153, 159, 160, Fry, J., an eminent authority on this branch of the law, allowed both specific performance and damages for delay. The same rule was applied in Jones v. Gardiner [1902] 1 Chancery Div. 191, 195, where the Court stated that,

" * * * where the breach of contract arises, not from inability to make a good title, but refusal to take necessary steps to give the purchaser possession pursuant to the contract further damages may be recovered. * * * "

In the United States most of the jurisdictions that have passed on this point hold that if the vendor refuses to convey the property, the vendee is entitled to recover damages for delay in addition to receiving specific performance. This doctrine has been approved and applied in New York, Schoen v. Grossman, 33 Misc. 2d 490, 230 N.Y.S.2d 771, 775, affirmed, 17 A.D.2d 778, 232 N.Y.S.2d 871; in Michigan, Reinink v. Van Loozenoord, 370 Mich. 121, 121 N.W.2d 689; in Oregon, Crahane v. Swan, 212 Or. 143, 318 P.2d 942; in Virginia, Nagle v. Newton, 22 Gratt. 814, 821; in South Carolina, Butler v. Schilletter, 230 S.C. 552, 96 S.E. 2d 661; and in Mississippi, McVay v. Castanera, 156 Miss. 785, 126 So. 832, as well as in some other States.

Illinois seems to be the lone dissenter. In Schiavone v. Ashton, 269 Ill.App. 386, the Court in granting specific performance in favor of the purchaser, rejected his claim for damages based on depreciation of the property during the period of delay. It was held that the purchaser may not have both specific performance and damages.

Story in his Commentaries on Equity Jurisprudence ¶ 1085, recognizes that damages for delay may be awarded to a vendee in addition to a decree of specific performance. He said:

Wherever compensation or damages are incidental to other relief, as for instance, where a specific performance is decreed upon the application of either party, with an allowance to be made for any deficiency as to the quantity, quality, or description of the property, *or for any delay in performing the contract,* there it seems clear that the jurisdiction properly attaches in equity, for it flows and is inseparable from the proper relief. (Emphasis supplied.)

This doctrine is likewise approved in Fry's Treatise on Specific Performance of Contracts, 2d Ed., §§ 1265–1274.

A more difficult hurdle for the plaintiff to surmount is the measure of damages. Reverting to a summary of the plaintiff's claim, the sale price of the property was $1,000,000. It is contended that at the time of the conveyance its

fair market value was $1,445,000. In other words, it was worth much more than the amount that the plaintiffs were paying for it. As a result of the delay in performance, however, the plaintiffs had to forego an opportunity to re-sell the property for $1,800,000 for which they had a definite contract or commitment. The claim is for the loss of profit on the projected re-sale, which would have amounted to $355,000.

There is some basis in the authorities for such a measure of damages. Thus, in McVay v. Castanera, 156 Miss. 785, 126 So. 832, which has already been discussed in another connection, the vendee entered into a contract for re-sale at a profit. This transaction fell through because of the vendor's delay in conveying the property. It was held that the vendee was entitled to recover the profit that he would have realized on the re-sale, plus interest from the date on which the re-sale was to have taken place. These damages were awarded in addition to specific performance. From one standpoint this is a fair and equitable result, because it comes as near as possible to placing the vendee in the position that he would have occupied had the contract been performed. On the other hand, a danger of speculative or problematical claims is lurking in such a doctrine.

■ The law of the District of Columbia is different. The rule prevailing in this jurisdiction does not award to the disappointed vendee a loss of prospective profits. It does not accord to him the benefit of the bargain that he had made. It allows him merely the difference between the contract price and the fair market value of the property at the time when the conveyance should have been consummated. While under certain circumstances such a result would constitute a fair disposition of the controversy, as in case the market value of the property goes down between the date of the contract and the date on which the conveyance should have been made, it denies any damages to the vendee in cases in which the property has risen in value subsequently to the date of the contract.

On the other hand, it avoids the undesirable possibilities to which we have just referred.

This rule was definitively formulated and applied by the Court of Appeals for this Circuit in Quick v. Pointer (1950) 88 U.S.App.D.C. 47, 186 F.2d 355, which has been cited with approval in later cases. The Court summarized the facts and enunciated the applicable rule of law as follows:

> This is an appeal from a judgment of the District Court for damages for breach of a contract to sell real estate * * *. The contract was for a price of $16,000. Ten days after the contract was made, and before settlement day, the purchaser made a contract for a resale at $19,500. It then appeared that the original vendor did not have title * * *. His vendee sued. The trial court * * * gave judgment for $3,500, the difference between the prices in the two contracts.

> The established rule in this jurisdiction is that damages under these circumstances are the difference between the contract price and the fair market value of the property. No mention of fair market value appears in this record * * *. The judgment for the vendee must therefore be reversed on that point.

No reason appears discernible for applying a different principle where damages are sought in addition to specific performance than where action is brought solely to recover damages.

■ In the light of these considerations, this Court is constrained to reject the claim for loss of profits as not being cognizable under the law of the District of Columbia. It necessarily follows that interest likewise may not be allowed.

The third item of the plaintiffs' claim is for counsel fees. It is indeed true that abstract justice, which seeks to make a litigant whole, would include recompense to the prevailing party for his expenses. In most instances counsel fees are a major factor of a litigant's outlay. This is the philosophy adopted by the law of

England, under which all expenditures incurred by the prevailing party, including counsel fees, are taxable as costs.

 The law in the United States has, however, developed along a different line. Each party to a lawsuit pays his own expenses and if he prevails, he is reimbursed only for certain taxable items of costs, which frequently are negligible and at times only nominal. In most instances he is not recompensed for counsel fees. No doubt there is an element of injustice in this doctrine, since a victory may at times prove to be very costly. A person who successfully pursues a valid claim still has to pay his own expenses instead of being made whole by his adversary. So, too, a person who successfully resists a claim departs without repayment of the expenses that he has sustained in defeating it. There are a few exceptions, generally either by statute or by contract. For example, it is expressly provided that a successful plaintiff in an action for triple damages under the Anti-trust laws, may also recover counsel fees, 15 U.S.C. § 15. Strangely enough a victorious defendant in such a law suit is not given the same consideration. Provisions for reimbursement for attorneys' fees are at times contained in promissory notes of certain types. In the vast majority of cases, however, the successful party in American courts does not recover counsel fees from his opponent.

This subject is discussed at some length in Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248. It is there pointed out that the American doctrine has been developed deliberately on the theory that the English practice makes access to the courts difficult for persons of moderate means and discourages many persons from seeking to enforce their rights. Whether one agrees with the English or American approach as being the more just of the two, this Court is, of course, bound by the Federal rule. That the Court has inherent power to award counsel fees, is not to be denied. Neither can it be successfully questioned that such power may be exercised only in rare and unusual instances. Such a situation is not present in this case and, therefore, the Court is constrained to deny the claim for counsel fees.

In the light of the foregoing discussion, the Court reaches the conclusion that the defendant is not entitled to recover any damages for delay.

The plaintiffs' motion for summary judgment is granted, and the defendants' motion for summary judgment is denied.