**ALASKA LABORERS TRAINING FUND, Appellant,**

v.

**P & R ENTERPRISES, INC., an Alaska Corporation, Appellee.**

No. 3523.

Supreme Court of Alaska.

Sept. 1, 1978.

Bradley D. Owens, Jermain, Dunnagan & Owens, Anchorage, for appellant.

Timothy G. Middleton, Wohlforth & Flint, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

The question in this case is whether summary judgment ordering specific performance of a contract to sell real estate was proper. The facts are as follows.

Until 1972, Jack and Ruth Guard owned a lounge, restaurant and motel known as the Edgewater. In 1972, the Guards sold the Edgewater to Country City, Inc., taking a note of $395,000 secured by a deed of trust on the property under which Alaska Title Guarantee Company was trustee and the Guards were beneficiaries. In late 1973, Country City, Inc., defaulted on the note and filed a petition in bankruptcy. The bankruptcy court issued an order authorizing Jack Guard to operate and manage the Edgewater on behalf of the trustee in bankruptcy. He was not authorized to sell the

property. Nevertheless, Guard, in his individual capacity, entered into a contract to sell the property to P & R Enterprises, Inc., on March 3, 1975. The sale price was $450,000 with a $100,000 down payment to be paid on closing, a part of which was to be a transfer of land, and the balance was to be paid in installments. When the agreement was signed, P & R paid Guard $20,000 which was to be part of the down payment.

It quickly became apparent to P & R that Guard did not have title to the property. Around March 30, 1975, the parties orally amended the contract to allow Guard 110 days within which to obtain title. On June 17, 1975, the bankruptcy court entered an order abandoning the property to the bankrupt, Country City, Inc. On August 8, 1975, after the 110 day period had terminated, the Guards entered into a lease-purchase agreement with Appellant Alaska Laborers Training Fund (Laborers) under which Laborers would lease the property until the Guards obtained title and then purchase it for $475,000. Lease payments were $4,000 per month and were to be credited toward the purchase price. On August 18, Guard sent back the $20,000 deposit made by P & R upon the signing of the March 3, 1975 contract. P & R returned the check and refused to agree to a rescission of the contract.

Laborers took possession as lessee on or about September 24, 1975, and began alterations to convert the property for use as a training facility. On October 2, 1975, the trustee under the 1972 deed of trust executed a notice of default and sale pursuant to AS 34.20.070, scheduling a non-judicial foreclosure sale for January 8, 1976.

On September 29, 1975, P & R sued the Guards for specific performance and damages; a few weeks later Laborers was added as a third party defendant. On October 15, 1975, P & R recorded a *lis pendens*. P & R moved to enjoin Laborers from altering the property, and the motion was denied. P & R did not seek to enjoin the deed of trust sale, and when it was held Laborers purchased the property, evidently for $457,000 in cash, and received a deed from the trustee.

In October of 1976, P & R moved for summary judgment seeking specific performance of the March 3, 1975 contract and damages. Over opposition, the motion was granted, and the court entered summary judgment requiring Laborers to convey the property to P & R. The question of the amount of damages owed by the Guards to P & R was tried, and the court awarded P & R damages of $164,000. The Guards have not appealed from the damage award. Laborers has appealed from the summary judgment requiring specific performance.

Laborers' primary point on appeal is that the decree of specific performance was inappropriate because Guard did not have title to the property when he purported to sell it to P & R, and never thereafter acquired it, and that Laborers' acquisition of the property at the foreclosure sale gave it clear title. Laborers argues that title was in Country City, Inc., until the foreclosure sale, and that when it purchased at the foreclosure sale it acquired the title which Country City, Inc., had in 1972 when it executed the deed of trust. P & R responds that the purchase by Laborers at the deed of trust sale was subordinate to the interest P & R obtained through its contract with Guard because Laborers had actual notice of the contract or constructive notice by virtue of the *lis pendens*.

The "purchaser at a deed of trust sale takes land subject only to those encumbrances which were created before execution of the trust deed, except where provided otherwise by statute." [1] His title is not affected by knowledge of adverse claims or interests arising after the execution of the trust deed; it is superior to them because it

1. *Lynch v. McCann*, 478 P.2d 835, 836–37 (Alaska 1970); AS 34.20.090(a), which provides in pertinent part:

The sale and conveyance transfers all title and interest which the party executing the

deed of trust had in the property sold at the time of its execution, together with all title and interest he may have acquired before the sale . . . . .

relates back to the time of the execution of the deed of trust.[2] Thus a *lis pendens* which relates to an interest arising after the execution of the deed of trust will not affect the title obtained by a purchaser at a valid foreclosure sale.

Counsel for P & R acknowledged this point in the October 22, 1975 argument before Superior Court Judge Moody on its motion to require Laborers to cease alterations to the premises. At the conclusion of the hearing, counsel for P & R requested a trial before the foreclosure sale, pointing out that this was necessary in order to prevent P & R's interests from being eliminated by the sale:

> [T]here is a summary deed of trust foreclosure sale set for January 8th of next year. So potentially the following could happen: we could have the lawsuit hearing/trial between the plaintiffs and Mr. Guard, et al., plaintiffs could be victorious, and that interest could potentially be extinguished at the time of sale if John Q. Public came in at the sale with cash. Of course, we'd still have redress against Mr. Guard.[3]

 A party seeking summary judgment must demonstrate that it is entitled to judgment as a matter of law.[4] Under the facts presented P & R could not meet this burden.

REVERSED and REMANDED.

---

**2.** *Higley v. City of Sacramento*, 149 F.Supp. 118, 121 (N.D.Cal.1957); *Penryn Fruit Co. v. Sherman-Worrell Fruit Co.*, 142 Cal. 643, 76 P. 484, 485 (1904); *Bank of America v. Hirsch Mercantile Co.*, 64 Cal.App.2d 175, 148 P.2d 110, 115 (1944).

**3.** Case No. 75–7148, Transcript of Hearing, October 22, 1975, at 21.

**4.** Ak.R.Civ.P. 56(c).