Jack GUARD and Ruth Guard,
Appellants,

v.

P & R ENTERPRISES, INC., Appellee.

No. 4772.

Supreme Court of Alaska.

July 17, 1981.

G. R. Eschbacher, Anchorage, for appellants.

Timothy G. Middleton, Wohlforth & Flint, Anchorage, for appellee.

Before RABINOWITZ, C. J. and CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This appeal is a sequel to the events described in *Alaska Laborers Training Fund v. P & R Enterprises, Inc.*, 583 P.2d 825 (Alaska 1978). We are asked to decide whether the trial court properly denied relief from a judgment under Alaska Civil Rule 60(b) following our decision in *Alaska Laborers* and, if relief is warranted, to determine the proper measure of damages. We find that the trial court abused its discretion in denying relief from the judgment.

In 1975, the Guards signed an earnest money agreement with P & R Enterprises (P & R) to sell it property upon which a restaurant, lounge, and motel known as Edgewater Inn was located. However, Alaska Laborers Training Fund (Alaska Laborers) subsequently purchased the property in a trustee's sale in 1976. P & R sued the Guards and Alaska Laborers for damages and specific performance of the earnest money agreement. On March 9, 1977, the superior court entered summary judgment for P & R, directing Alaska Laborers to transfer the property to P & R. The superior court indicated in its judgment that the Guards were liable to P & R for damages, the amount of which would be determined at a later trial. On April 21, 1977, the superior court entered judgment against the Guards for $164,000 as of April 1, 1977, and for $10,000 per month until the property was transferred to P & R. Alaska Laborers appealed and in *Alaska Laborers Training Fund v. P & R Enterprises*, 583 P.2d at 827, we reversed the superior court decision of April 21, 1977, and remanded the

case. Almost nine months later, the Guards petitioned for relief from the damage portion of the original judgment under Alaska Civil Rule 60(b)(4) and the superior court denied relief without an opinion.

■ Civil Rule 60(b) requires that motions for relief be made within a reasonable time. Because of the unique circumstances in this case, the Guards' petition for relief, filed almost nine months after our decision in *Alaska Laborers* and twenty-four months after the superior court judgment in April, 1977, was timely. Although in *Alaska Laborers*, we specifically stated that the Guards had not appealed the April, 1977, judgment, 583 P.2d at 826, the wording of the mandate issued in *Alaska Laborers* is confusing as to the parties affected by the decision. The mandate states that the judgment of April 21, 1977, is reversed. The April 21, 1977, judgment was entered against both the Guards and Alaska Laborers. Considering the interrelationship of the damage award and the order of specific performance, and that the mandate did not limit its application to only Alaska Laborers, it is understandable that the Guards assumed there was no valid judgment against them. That this was not the situation was brought to the Guards' attention when P & R attempted an execution of the April 21, 1977, judgment on their property in Idaho in May, 1979. The superior court denied a stay of execution on the property. When the execution proceedings began, the Guards filed a motion for relief from judgment. Thus, the Guards moved quickly after learning of their confusion regarding the *Alaska Laborers* decision and mandate. On these facts, their petition for relief was timely.

The superior court awarded a money judgment against the Guards as part of its decree of specific performance. The monetary relief awarded in association with an order of specific performance is not the same as damages awarded for breach of contract. *Ellis v. Mihelis*, 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7, 15 (1963); *Greenstone v. Claretian Theological Seminary*, 173 Cal.App.2d 21, 343 P.2d 161, 165 (1959); Annot., 7 A.L.R.2d 1204 (1949). This principle was clearly set forth in *Tri State Mall Associates v. A.A.R. Realty Corp.*, 298 A.2d 368, 371–72 (Del.Ch.1972):

> "The compensation awarded to a purchaser incident to a decree of specific performance is not for breach of contract. By its very nature, a suit for specific performance affirms the contract and seeks that it be enforced. The purchaser is not due both specific performance of the contract and damages for its breach.... Rather, the Court in decreeing specific performance will adjust the equities of the parties in such a manner as to put them as nearly as possible in the same position as if the contract had been performed according to its terms." (emphasis omitted).

■ In adjusting the equities between the Guards and P & R, the trial court acted properly in, considering the profits which were foregone because of the delay in conveying the land.[1] *See generally Cohen v. Lovitz*, 255 F.Supp. 302, 304–05 (D.D.C. 1966), *aff'd sub nom. Wolf v. Cohen*, 379 F.2d 477 (D.C.Cir.1967). Since the order of specific performance was improper, the judgment against the Guards for $164,000 and for $10,000 per month until the property is transferred to P & R by Laborers must be vacated. However, the Guards did breach their contract with P & R to convey the Edgewater Inn. On remand the superior court must determine what damages, if any, should be awarded to compensate P & R for that breach. We set out below the general rules which the superior court should utilize when determining the award of damages.

---

1. In awarding lost profits as damages incident to a specific performance award, courts analogize from the case law developed in actions for breach of contract where damages at law for lost profits were awarded. *See* Annot. 7 A.L. R.2d 1204, 1233–34 (1949). When awarding lost profits to adjust the equities, there is "a danger of speculative or problematical claims," *Cohen v. Lovitz*, 255 F.Supp. 302, 305 (D.D.C. 1966), *aff'd sub nom., Wolf v. Cohen*, 379 F.2d 477 (D.C.Cir.1967), just as there is when awarding damages at law.

Alaska Civil Rule 60(b) provides that a "court may relieve a party . . . from a final judgment . . . [when] (5) . . . it is no longer equitable that the judgment should have prospective application. . . ."[2] Generally, we will not disturb a superior court decision to deny a motion under Civil Rule 60(b) "except upon a showing of an abuse of discretion, which would be the case only if we were left with the definite and firm conviction on the whole record that the judge had made a mistake. . . ." (footnote omitted). *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273, 277 (Alaska 1967). *See McCracken v. Davis*, 560 P.2d 771, 776–77 (Alaska 1977). In this case, the Guards have established the two requirements necessary for relief under Civil Rule 60(b)(5). First, the judgment clearly falls into the category of those judgments which, equitably, should no longer have application. In *Alaska Laborers* we held that the order requiring Alaska Laborers to transfer property to P & R was improper. 583 P.2d at 826–27. The damage award against the Guards for $164,000 and $10,000 a month from April 1, 1977, until the land was transferred, was based on the superior court's conclusion that the contract was breached and that P & R was entitled to the land and loss of profits. Since P & R is not entitled to the land, however the continuing damage award has no proper application.[3]

The purpose of awarding damages for a breach of contract is to put the injured party in as good a position as that party would have been had the contract been fully performed. *McBain v. Pratt*, 514 P.2d 823, 828 (Alaska 1973); *Green v. Koslosky*, 384 P.2d 951, 952 (Alaska 1963). In contracts for land sales, the award for the loss of the bargain is "the difference between the contract price and the market value, plus any payments which have been made." C. McCormick, Law of Damages § 177 (1935). *See* 11 S. Williston, Law of Contracts § 1399, at 527 (Jaeger 3d ed. 1968). Consequential losses which the seller could reasonably have anticipated when the contract was made are also recompensible. C. McCormick, Law of Damages § 681 (1935). Thus, lost profits can be awarded, *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 222 (Alaska 1977), as consequential damages, if they were reasonably anticipated. C. McCormick, Law of Damages § 681 (1935).

An award of lost profits is not proper if it is the result of speculation. *Dowling Supply & Equipment, Inc. v. City of Anchorage*, 490 P.2d 907, 909–10 (Alaska 1971). *See State v. Hammer*, 550 P.2d 820, 824–25 (Alaska 1976). This is based on the generally accepted principle of contract law that damages are not recoverable unless they are reasonably certain. 5 A. Corbin, Corbin on Contracts §§ 1021–22 (1961); Restatement of Contracts § 331 (1932).

Application of this principle has led courts to deny recovery for lost profits of an unestablished business, as an invariable rule. *See Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 569 F.2d 251, 259 (5th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978) (applying Texas common law); *China Doll Restaurant, Inc. v. Schweiger*, 119 Ariz. 315, 580 P.2d 776, 780 (1978); *Grupe v. Glick*, 26 Cal.2d 860, 160 P.2d 832, 840 (1945); *St. Paul at Chase Corp. v. Manufacturer Life Insurance Co.*, 262 Md. 192, 278 A.2d 12, 37–38 (App.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971); *Hughes v. Hobson*, 558 P.2d 543, 544 (Nev.1976); *Truscott v. Peter-*

---

2. Although the Guards petitioned for relief under Alaska Civil Rule 60(b)(4), this controversy is more properly treated under Civil Rules 60(b)(5).

3. Because of the continuing nature of the damage award, it is similar to an injunction. Relief from orders establishing injunctions, when warranted are traditionally granted under Civil Rule 60(b)(5). *See* 7 J. Moore, Federal Practice ¶ 60.26[4] (2d ed. 1979). When a subsequent modification of law by an authoritative judicial decision renders the continuance of the injunction, or in this case, a damage award that operates similar to an injunction, inequitable, the party under the order should be granted appropriate relief. *Id.* at ¶ 60.26[4], 335–36. *See, e. g., System Federation No. 91 v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349, 353 (1961).

son, 78 N.D. 498, 50 N.W.2d 245, 247 (1951); *Mullen v. Brantley*, 213 Va. 765, 195 S.E.2d 696, 700 (1973). The more enlightened approach, however, is to allow damages for lost profits to new businesses if the injured party can show damages with reasonable certainty. *See Mechanical Wholesale, Inc. v. Universal-Rundle Corp.*, 432 F.2d 228, 231 (5th Cir. 1970) (applying Texas common law); *Standard Machinery Co. v. Duncan Shaw Corp.*, 208 F.2d 61, 64 (1st Cir. 1953) (applying Rhode Island common law); *Gerwin v. Southeastern California Association of Seventh Day Adventists*, 14 Cal.App.3d 209, 92 Cal.Rptr. 111, 119 (1971); *Vickers v. Wichita State University*, 213 Kan. 614, 518 P.2d 512, 517 (1974); *Fera v. Village Plaza, Inc.*, 396 Mich. 639, 242 N.W.2d 372, 374 (1976); *Brenneman v. Auto-Teria, Inc.*, 260 Or. 513, 491 P.2d 992, 994 n.1 (1971); *Ferrell v. Elrod*, 63 Tenn.App. 129, 469 S.W.2d 678, 686 (1971). In *Ferrell*, 469 S.W.2d at 686, the court noted that if profits could be shown with reasonable certainty, "there is no reason to penalize the enterprise of the founder of a new business by denying him his remedy for losses occasioned by the default of the defendant." In *Vickers*, the Kansas Supreme Court noted that to preclude recovery "as a matter of law merely because a business is newly established would encourage those contracting with such a business to breach their contracts." 518 P.2d at 517. We agree, and thus do not apply an inflexible rule denying recovery of lost profits to a new business for breach of contract.

Nevertheless, the lost profits must be proven with reasonable certainty. In cases involving an established business, courts have considered past profits a reasonably certain measure by which to calculate a damage award. *See Buck v. Mueller*, 221 Or. 271, 351 P.2d 61, 67 (1960); Note, The Requirement of Certainty in the Proof of Lost Profits, 64 Harv. L. Rev. 317, 319–20 (1950). A new business, however, does not have its own history of profits. Thus, courts have considered both the profit history from the plaintiff's similar business at a different location, *Standard Machinery Co. v. Duncan Shaw Corp.*, 208 F.2d 61, 64–65 (1st Cir. 1953); *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn.1977); *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358, 364 (1978), and the profit history from the business in question if it was successfully run by someone else before the plaintiff, *General Electric Supply Co. v. Mt. Wheeler Power, Inc.*, 587 P.2d 1312, 1313 (Nev.1978), to be a measure of reasonable certainty for a damage award when a new business has been injured.[4]

If P & R is to recover in this case, its profit history must come from a substantially similar business run by the P & R shareholders, because none of the previous owners of the Edgewater operated the facilities on the scale proposed by P & R.[5] Ralph Kalenka, one of the P & R shareholders, profitably ran a restaurant in Mountain View. Peter Dalhausser, another shareholder, had managed a restaurant and nightclub in Fairbanks. Although Kalenka and Dalhausser each had extensive experi-

---

4. In antitrust litigation, the injured party may prove damages for lost profits by use of statistical projections alone without showing any history of profits. *See Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 22–24 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974). The policies of antitrust law favor a less stringent certainty requirement for lost profits than contract law policy. Comment, Remedies—Lost Profits as Contract Damages for an Unestablished Business: The New Business Rule Becomes Outdated, 56 N.C. L. Rev. 692, 710 (1978). Because P & R's claim falls within the latter category, it will not be allowed to rely solely on statistical projections to prove lost profits. *See generally*

*City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 223 n.27 (Alaska 1977).

5. From 1960 until 1969, the Guards operated Country City (then known as the Edgewater) as a small restaurant, bar, and motel. In 1969, the Guards sold the property and the buildings because there was "too much work for the amount of money." The new owners were unsuccessful with the business and returned the property to the Guards. In 1972, the Guards sold the business to the Paces and the Greys. Subsequently, they put the business into Chapter XI bankruptcy proceedings. In 1974, the Guards were appointed the receivers until the sale to Alaska Laborers. The Guards never operated a nightclub on the property.

ence in the catering industry and general experience in managing restaurants, their previous businesses were not substantially similar to the planned "multi-million dollar restaurant," nightclub, and motel.[6] Thus, their past profits cannot be used as a basis for awarding lost profits here.

If P & R were allowed to recover from the Guards without establishing the certainty of profits, the Guards would become the guarantors of P & R's ability to make a profit in their new venture. At the time of the land sale agreement, P & R was in the better position to anticipate its profits than were the Guards. Because this was a contract between two parties, P & R could have negotiated a liquidated damages clause into the contract, thereby allocating the risk of lost profits in the event of the breach, and giving the Guards adequate information on which to value the risk of breach. Since P & R had the ability to negotiate the allocation of risk, the Guards should not be the guarantors of P & R's anticipated profits in the absence of more certain proof establishing that profits would have eventuated. Thus we conclude that the damage award must be revised.

REVERSED and REMANDED to the superior court for further proceedings consistent with this opinion.

BURKE, J., not participating.

---

**6.** In *Gerwin*, 92 Cal.Rptr. at 119, the court held that previous experience in operating a bar was not enough to allow plaintiff's projections for the profits of a separate hotel, bar, and restaurant business to support an award for lost profits. Similarly, the New Mexico Supreme Court has held that experience in operating a saloon was not sufficient to permit plaintiff's projections for the profits of the proposed nightclub. *Price v. Van Lint*, 46 N.M. 58, 120 P.2d 611, 617–18 (1941). As another example, in *China Doll Restaurant, Inc. v. Schweiger*, 119 Ariz. 315, 580 P.2d 776, 780–81 (1978), the court found that a Mexican restaurant was not similar to a Chinese restaurant; thus profits from the latter could not be used as a base for a profit prediction for the Mexican restaurant.